O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| LAREDO FRATERNAL ORDER OF POLICE, LODGE 911 and ROBERT MIRELES and RAUL F GARZA and GABRIEL E MARTINEZ, JR and VICTOR VILLARREAL and JOSE S HINOJOSA and ROBERT MEDINA and PAYLE and MANUEL CRUZ and JOSE SOLIZ, Plaintiffs, VS. CITY OF LAREDO, TEXAS and LAREDO POLICE OFFICERS' ASSOCIATION and ARMANDO ELIZONDO. Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § CIVIL ACTION NO. L-04-134 |

### MEMORANDUM & ORDER

Pending is a Motion to Dismiss for Failure to State a Claim

and Motion for a More Definite Statement filed by Defendant

Laredo Police Officers' Association (LPOA).  (Doc. Nos. 10 & 9.) Plaintiffs Laredo Fraternal Order, Lodge 911 (Lodge 911) and its individual members[1] have responded to the Motion to Dismiss. (Doc. No. 13.)

## Statement of Facts

Lodge 911 is a labor organization of police officers employed by the City of Laredo Police Department (LPD).  The organization was formed in November 2002 and acquired the status of a non-profit Texas Corporation in November 2003.  Plaintiffs allege that Lodge 911 is an organization dedicated to improving its members' working conditions, wages, and privileges of employment and safeguarding their contractual and statutory rights under Texas law.

Prior to Lodge 911's formation, LPOA was the only labor organization representing Laredo police officers.  Presently, it is the exclusive bargaining agent for LPD employees, and as such, has negotiated serial collective bargaining agreements (CBA) with the City of Laredo (City) regarding the terms, privileges, and conditions of employment of all LPD employees.

Plaintiffs allege that the present CBA is illegal.  The CBA's "union security clause" prohibits all labor organizations except LPOA from automatically deducting member dues through payroll.  Plaintiffs allege this provision violates its rights

of association under the First Amendment and under the Texas Constitution.  They also allege a pattern of harassment and intimidation by LPOA and the City because of their membership and active participation in Lodge 911, also in violation of their state and federal rights of association.  Finally, Plaintiffs allege the union security clause violates their state constitutional right to equal protection, the Texas Right to Work Act, and the Texas Fire and Police Relations Act.

### First Amendment Claim under Section 1983

To establish a federal association claim brought under 42 U.S.C. § 1983, Plaintiffs must allege that LPOA: 1) deprived them of a federal right and 2) committed the deprivation under color of state law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

Plaintiffs claim that the CBA's union security clause adversely affects the organization's ability to recruit potential members, advance views that differ from those of the LPOA and the Police Department administration, and participate in elections for an exclusive bargaining agent.  They also allege the purpose of the clause is to "impede and interfere" with Lodge 911's survival as a labor organization.

The First Amendment guarantees the right of an individual to speak freely, to advocate ideas, to associate with others,

and to petition the government for redress of grievances. *Smith v. Ark. State Highway Employees*, 441 U.S. 463, 464 (1979). It also protects the right of associations to engage in advocacy on behalf of their members. *Id.* However, the First Amendment does not impose any duty on a public employer to listen, to respond, or to recognize an association and bargain with it. *Id.*

Although the Fifth Circuit has not addressed the particular issue at hand, at least three sister circuits have held that a union is not entitled to payroll deductions under the principles stated in *Smith*. *See S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1256 (4th Cir. 1989); *Brown v. Alexander*, 718 F.2d 1417, 1423 (6th Cir. 1983); *Ark. State Highway Employees Local 1315 v. Kell*, 628 F.2d 1099, 1102 (8th Cir. 1980).

Based on these decisions, while loss of payroll deductions may tend to impair the effectiveness of the union in representing its members, "such 'impairment'... is not one that the First Amendment proscribes." *Campbell*, 883 F.2d at 1257. Also, even if the challenged provision causes Lodge 911 to have less money than it wants to exercise its First Amendment freedoms, the Constitution does not entitle it to funds necessary to realize all the advantages of those freedoms. *Id.* at 1256 (citing *Harris v. McRae*, 448 U.S. 297, 318 (1980)).

While Plaintiffs have no fundamental right to payroll

deductions, they also allege that the denial of payroll deductions is "designed to impede and interfere with the formation and existence of competing labor organizations."  The First Amendment protects the right of public employees to join unions and the right of their unions to engage in advocacy and to petition government in their behalf.  *Hitt v. Connell*, 301 F.3d 240, 245 (5th Cir. 2002); *Prof'l Ass'n of Coll. Educators (PACE) v. El Paso County Cmty. Coll. Dist.*, 730 F.2d 258, 262 (5th Cir. 1984).  State action intended to intimidate public employees from joining a union or from taking an active part in its affairs, or to retaliate against those who do, violates these rights.  *Id*.

In *PACE*, plaintiffs had no First Amendment right to the use of campus mail services.  *Id.* at 263.  However, plaintiffs alleged that the university withdrew their mail privileges in order to stifle their associative and expressive activities.  The court held that such allegations, if proven, "could furnish grounds for relief as part of, or even independent of, its basic claim of a general campaign to harass and retaliate against its members for exercising their rights of association."  *Id.*  Similarly, here, the denial of payroll deductions based on an intent to discourage Plaintiffs from associating could be grounds for relief.

In addition, Plaintiffs allege Defendants have engaged in a pattern of retaliatory conduct having both the purpose and effect of intimidating the individual named Plaintiffs and the unnamed members of Plaintiff from joining Lodge 911, from remaining members, or from taking an active part in its affairs. The actions against individual plaintiffs include termination, transfer to less prestigious assignments, denial of the presence of a Lodge 911 attorney during an Internal Affairs interview, internal investigations, and a threat of disciplinary action. Although some of the above acts may have caused only insubstantial injury, they are "not trifling when viewed in their totality." *See PACE*, 730 F.2d at 262-63. Thus, Plaintiffs have alleged a deprivation of their First Amendment rights.

Under section 1983, Plaintiffs must also allege that their constitutional rights were deprived by a person acting "under color of law." *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004). Generally, private entities such as unions are not state actors and therefore do not act under color of law. *Hudson v. Chicago Teachers Union Local No. 1*, 743 F.2d 1187, 1190-91 (7th Cir. 1984). However, an otherwise private entity acts under color of law by conspiring with or acting in concert with state officials to deprive another of federal rights, or,

by being a "willful participant in joint activity with the State or its agents." *Priester*, 354 F.3d at 420. Thus, Plaintiffs must allege an agreement between the private and public defendants to commit an illegal act. *Id*. The allegations of an agreement must refer to specific facts, and more than conclusory statements is required. *Id*. (citing *Brinkmann v. Johnston*, 798 F.2d 111, 113 (5th Cir. 1986)).

Some of the alleged acts of retaliation involved LPOA or its members, including the negotiation of the CBA. A CBA negotiated between a union and governmental entity may constitute concerted action. *Hudson v. Chicago Teachers Union Local No. 1*, 743 F.2d 1187, 1190-91 (7th Cir. 1984) (holding that union was subject to section 1983 liability when it "acted in concert" with public agency to negotiate terms of the CBA). *Id. See also Messman v. Helmke*, 133 F.3d 1042, 1045 n.2 (7th Cir. 1997) (holding that section 1983 challenge to CBA was actionable against union which "[did] not dispute that it was acting under color of state law when it joined with the City in drafting and ratifying the CBA"). Here, Plaintiffs allege that the City and LPOA entered into a CBA that was "designed to impede and interfere with the formation and existence of competing labor organizations" and ensure LPOA's status as the exclusive bargaining agent with the City. These allegations properly

allege LPOA acted in concert with the City to deprive Plaintiffs of their freedom of association rights. The motion to dismiss the freedom of association claim will be denied.

### State Constitutional Claims

Plaintiffs claim that the CBA violates the Texas Constitution because it violates their rights to freedom of assembly and equal protection. Tex. Const. art. I, §§ 27, 3.

To bring a Texas constitutional claim against LPOA, Plaintiffs must allege 1) violation by LPOA of a state constitutional right and 2) that such violation is "state action." *See Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 90-91 (Tex. 1997) (holding that Texas Bill of Rights, including guarantees of free speech and equal protection, does not apply to purely private conduct).

### 1. Texas Freedom of Assembly Claim

Texas' freedom of assembly provision2 is parallel to and coextensive with the federal freedom of association guarantee. *See Tex. Review Soc. v. Cunningham,* 659 F.Supp. 1239, 1248 (W.D. Tex. 1987) (treating Tex. Const. art. 1, § 27 as coextensive with the First Amendment, based on lack of Texas authority to the contrary and similarity of provisions). Thus, for reasons already stated, Plaintiffs have properly alleged a deprivation of a state constitutional right.

Plaintiffs must also properly allege that the deprivation was caused by state action. *Dietz*, 940 S.W.2d at 90-91. *See also* Tex. Const. art. I, § 29 (the Texas "Bill of Rights" applies to "the general powers of government"). Otherwise private conduct is "state action" when the conduct can be "fairly attributed to the government." *Id*. Although the Texas and federal tests for state action are not always coextensive, *see e.g. Jones v. Mem'l Hosp. Sys.*, 746 S.W.2d 891, 895 (Tex. App.–Houston [1st Dist.] 1988, no writ), there is no reason to believe that Texas would not recognize the federal "in concert" theory of state action previously discussed. *See Dietz*, 940 S.W. at 91 (recognizing that federal case law "provide[s] a wealth of guidance" in resolution of state action cases").

### 2. Texas Equal Protection Claim

Plaintiffs also claim that the CBA is unconstitutional under the Texas constitution, because it violates their right to equal protection by giving LPOA, but not Lodge 911, the privilege of automatic payroll deductions.3  Again, Plaintiffs must allege 1) a deprivation of its constitutional rights and 2) the deprivation is caused by state action. *Dietz*, 940 S.W.2d at 90-91.

Although Plaintiffs have no fundamental right to payroll deductions, the allegation of disparate treatment between Lodge 911 and LPOA presents a cognizable equal protection claim.  *See Brown*, 718 F.2d at 1423.4  However, because Plaintiffs have no fundamental right to payroll deductions, Defendants need only demonstrate a "rational basis" for distinguishing between the two organizations.  *Id.; see also City of Charlotte v. Local 660, Intern. Ass'n of Firefighters*, 426 U.S. 283, 286.  The policy need only "rationally further a legitimate state purpose."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983).  Plaintiffs have alleged that Defendants' purpose is to ensure LPOA's continuance of its status as the exclusive bargaining agent and impede and interfere with the formation and existence of competing labor organizations.  Defendants have yet to offer any justification for the distinction.

Plaintiffs have also properly alleged the CBA is state action for reasons discussed previously.

### Right to Work Claim

Plaintiffs claim that the denial of payroll deductions violates their "right to work."  "The right of a person to work may not be denied or abridged because of membership or nonmembership in a labor union or other labor organization."

Tex. Lab. Code Ann. § 101.301(a) (Vernon 1996).  The statute's purpose is to "afford equal opportunity to work" to union members and nonmembers.  *Lunsford v. City of Bryan*, 297 S.W.2d 115, 117 (Tex. 1957).  Further, "In the exercise of the right to work, each person shall be free from threats, force, intimidation, or coercion."  § 101.301 (b).  Plaintiffs claim that they are impeded in recruiting new members and associating with one another because of the denial of payroll deductions.  They are also required to incur expenses to collect dues and also have been deprived of the use of member dues to accomplish their goals as a labor union.  However, these harms do not amount to a denial of employment, nor do they amount to threats, force, intimidation, or coercion.  Therefore, the right to work claim will be dismissed.

### Fire and Police Employee Relations Act Claim

Plaintiffs claim that prohibiting them from payroll deductions is void under the Fire and Police Employee Relations Act.  Tex. Local Government Code Ann. § 174.001-174.252 (Vernon 1999).  Specifically, Plaintiffs allege that the CBA's union security clause violates the public policy expressed in two separate sections of the Act.  The first section requires that a public employer recognize the association selected by a majority of the police officers as the exclusive bargaining agent for the

police officers of that department. § 174.102. The other section provides that the majority representative be determined by "a fair election" according to procedures agreed on by the parties. § 174.104(a).

Plaintiffs argue that the CBA violates the spirit of these provisions, because LPOA has an unfair advantage of being elected as the exclusive bargaining agent over other labor organizations who cannot collect dues through payroll deductions. However, neither provision imposes a duty on the public employer to provide the parties with payroll deductions. Nor are payroll deductions essential to conducting a "fair election." This claim will be dismissed.

### Motion for More Definite Statement

LPOA claims that numerous allegations in the complaint are vague. If a complaint "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement..." Fed. R. Civ. P. 12(e). However, such a motion is generally disfavored and is used to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail. *Flores v. City of Palacios*, 270 F. Supp.2d 865, 874 (S.D. Tex. 2003, *rev'd on other grounds*). Although some detail may be lacking, the complaint gives Defendants sufficient notice of the nature of

Plaintiffs' claims.

## Conclusion

Under Rule 12(b)(6), a cause of action is dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Defendants have not met this requirement with respect to the First Amendment claim, Texas freedom of assembly claim, or Texas equal protection claim, and the motion to dismiss is DENIED with respect to those claims.5 Plaintiffs' Texas Right to Work Act claim and Fire and Police Employee Relations Act claim are DISMISSED for failure to state a claim. The motion for more definite statement is DENIED.

DONE at Laredo, Texas, this 29th day of April, 2005.

George P. Kazen
United States District Judge