United States District Court
Southern District of Texas
FILED
MAR 1 2 2008
Michael N. Milby, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| LAREDO FRATERNAL ORDER OF POLICE, LODGE 911, ET. AL, | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. L-04-134 |
| CITY OF LAREDO, TEXAS, and LAREDO POLICE OFFICERS' ASSOCIATION, | § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

After reviewing the pending motions (Dkt. Nos. 58-66) and accompanying briefs and exhibits (Dkt. Nos. 76-77) and as discussed in open court on March 7, 2008, the Court finds and orders as follows:

1. The governing CBA provides that the LPOA is the exclusive collective bargaining agent for all officers employed by the Laredo Police Department ("LPD"). The LPOA appears to represent approximately 81% of the 418 LPD officers. As majority union and as winner of a properly held collective bargaining agent election, it is the exclusive collective bargaining agent for all 418 police officers.[1] CBA article 10.2 provides that the City will deduct LPOA dues from the paychecks of any LPOA members who elect the payroll deduction, but shall not authorize payroll dues deductions to any other employee organization. This provision is lawful and does not offend either the First Amendment or the Equal Protection Clause of the U.S. Constitution. "It is recognized that a labor

---

[1] TEX. LOCAL GOV'T CODE ANN. § 174.102 (Vernons 2008) ("A public employer shall recognize an association selected by the majority of police officers . . . as the *exclusive* bargaining agent for the police officers of [the] department . . . .") (emphasis added).

association . . . chosen by a majority of employees may lawfully and constitutionally enjoy a status, as to check-off or other privileges, that other organizations may not enjoy." *Brown v. Alexander*, 718 F.2d 1417, 1424 (6th Cir. 1983). "There is a recognized rational basis for such a public policy to avoid inter-union disputes and labor discord in a public employee forum." *Id.* This practice "has become commonplace in private industry and in the labor policies of other governmental bodies. For example, the Federal Railway Labor Act specifically empowers the carrier and the exclusive bargaining agent to agree on an exclusive dues check-off." *Bauch v. City of New York*, 237 N.E.2d 211, 214 (N.Y.), *cert. denied* 393 U.S. 834 (1968). In this context, the employer "has an obligation to treat with this representative exclusively and [even] has a negative duty to treat with no other." *Local 858, Am. Fed'n of Teachers v. Sch. Dist. No. 1, County of Denver*, 314 F.Supp. 1069, 1075 (D.C. Colo. 1970).

2. Plaintiffs cite two cases to support their claim for dues deductions, *Abood v. Detroit Board of Education*, 97 S.Ct. 1782 (1977), and *Hudson v. Chicago Teachers Union Local No. 1*, 743 F.2d 1187 (7th Cir. 1984). *Abood* and *Hudson* are not relevant to the dues check-off issue. In those cases, the courts held that it does not violate the First Amendment when a collective bargaining agent and a municipality form an "agency shop" agreement, one that requires "every employee in the unit to pay a service fee to defray costs of collective bargaining, contract administration, and grievance adjustment." *Ellis v. Brotherhood of R.R., Airline & Steamship Clerks, etc.*, 104 S.Ct. 1883, 1892 (1984) (citing *Abood*). The union cannot, however, collect from dissenting employees any sums for the support of ideological causes not germane to its dues as collective bargaining agent. *Id.* There is no such agency shop agreement at issue here. There is no effort to collect any dues

2

from non-LPOA members.

3. Being the exclusive collective bargaining agent also entitles the LPOA to certain exclusive privileges with respect to access to communicate facilities within the LPD, a non-public forum.[2] "The differential access provided [LPOA] and [LFOP] is reasonable because . . . [u]se of [certain] facilities enables [LPOA] to perform effectively its obligations as exclusive representative of all [LPD officers]." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 103 S.Ct. 948, 958 (1983). Conversely, the LFOP "does not have any official responsibility in connection with the [LPD] and need not be entitled to the same rights of access." *Id.* Indeed, it may well be an unfair labor practice to grant access to internal communication facilities to unions other than the exclusive bargaining representative. *Id.* at 959 n.11.

4. However, the Court interprets applicable case law to require that the LFOP have some alternative means of communication with the police officers of the LPD. In *Perry* and "in a line of non-public forum cases in which restrictions on access have been upheld," the restrictions were upheld "at least in part because other means of access were available." *Ysleta Fed'n of Teachers v. Ysleta Indep. Sch. Dist.*, 720 F.2d 1249, 1433 n.3 (5th Cir. 1983). The reasoning of *Perry* does not allow the City to prohibit those in the minority union from expressing their views anywhere on City property. *Id.* "The language in *Perry* suggests that the Court would consider such a prohibition unlawful." *Id.*

5. As discussed at the recent hearing, the Court DIRECTS the parties to meet forthwith and make a good-faith effort to agree on what alternate communication facilities

---

[2] *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 103 S.Ct. 948, 954 (1983) (governing access to non-public forums for communications purposes by different standards). The mere fact that the LPD may allow outside or other organizations selective access to its communication facilities "does not transform government property into a public forum." *Id.* at 956.

3

can be made available to the LFOP. The parties are most familiar with the various appropriate locations in and around the LPD's building(s), such as meeting rooms, bulletin boards, and display areas. The parties are further DIRECTED to report the results of their meeting(s) to the Court by March 31, 2008, either with a complete agreement or else a statement of the extent to which they cannot agree.

6. There are nine pending motions: one against the LFOP and eight against individually named members of the LFOP. To the extent the motions address the dues check-off issue, all the motions (Dkt. Nos. 58-66) are GRANTED. The motions otherwise focus almost entirely on the issue of whether Plaintiffs have sufficiently alleged or produced evidence of an "adverse employment action," which is one element of a First Amendment retaliation claim. *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004). However, the motions exclusively rely on interpretations of adverse employment action published prior to the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*. 126 S.Ct. 2405 (2006).[3] The Court agrees with *Rodriguez v. City of Laredo* that the adverse employment action standard for § 1983 retaliation claims has now changed, *Rodriguez*, No. 5:06-cv-175, 2007 WL 2329860, at *3 (S.D. Tex. 2007), and *Burlington* is to be applied.

7. With respect to three plaintiffs, Garza, Martinez, and Villarreal, the Court concludes that even under the more relaxed *Burlington* standard, the Amended Complaint contains no specific allegations of an adverse employment action against them. Furthermore, the Plaintiffs' Consolidated Response does not specifically address or mention any individual claims they might have. Rather, it addresses their claims in the

---

[3] Under the new standard for Title VII retaliation claims, "a plaintiff must show that a reasonable employee [in his or her condition] would have found the challenged action materially adverse, which means it well might have dissuaded a reasonable worker from" engaging in the protected conduct. *Burlington*, 126 S.Ct. at 2415.

context of the general complaints that the LFOP asserts on their behalf regarding, e.g., dues check-offs and union access to communications facilities, etc. Therefore, Defendants' motions for summary judgment against these three plaintiffs (Dkt. Nos. 59, 61, 65) are **GRANTED** in their entirety.

8. As to the motions for summary judgment against the remaining five individual plaintiffs (Dkt. Nos. 58, 60, 62-64) and the LFOP (Dkt. No. 66), except for the dues check-off issue, they are **DENIED** without prejudice. Defendants may, if they choose, file more precise motions for summary judgment under the new *Burlington* standard. It would be preferable, however, that no further motions be filed until the communications issue, hopefully, can be resolved. At that time, all concerned would have a clearer picture of what viable issues still remain in dispute.

DONE at Laredo, Texas, this 12th day of March, 2008.

George P. Kazen
United States District Judge